(No. 34942.—)

JOHN G. GROBARK *et al.,* Appellants, *vs.* ADDO MACHINE COMPANY, INC., Appellee.

*Opinion filed March 20, 1959—Rehearing denied May 22, 1959.*

DAVIS and SCHAEFER, JJ., dissenting.

JOHN A. COOK, and W. F. LEVANDER, JR., both of Chicago, for appellants.

CHAPMAN AND CUTLER, of Chicago, (KEEHN LANDIS, of counsel,) for appellee.

· Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

The plaintiffs, John G. Grobark and John C. Grobark, filed their complaint in the superior court of Cook County against Addo Machine Company, Inc., herein referred to as Addo, and John P. Berg and Robert Hanson (who are not parties to this appeal). The plaintiffs asked judgment

for $50,000 against the three defendants and $25,000 as punitive damages against the individual defendants.

Personal service was obtained on Addo in New York City by the sheriff of New York County. The plaintiffs assert jurisdiction over Addo under sections 16 and 17 of the Civil Practice Act (Ill. Rev. Stat. 1957, chap. 110, pars. 16, 17,) as a case arising out of the transaction of business within the State of Illinois.

Addo filed a special appearance for the sole and limited purpose of objecting to the jurisdiction of the court upon the ground that it had not transacted business within the State of Illinois, and that the matters complained of took place prior to January 1, 1956, the effective date of the amendatory act. The court, upon the complaint, special appearance and certain affidavits, entered an order quashing the service of summons upon Addo. Upon appeal, the Appellate Court affirmed the order of the superior court upon the ground that Addo was not transacting business in the State of Illinois and, therefore, did not submit to the jurisdiction of the courts of Illinois. We granted leave to appeal. Subsequent to the order of the trial court, this court decided, in *Nelson* v. *Miller,* 11 Ill.2d 378, 382, that the 1955 amendments to sections 16 and 17 apply to a cause of action brought after January 1, 1956, the effective date thereof, even though the action arose prior to such date.

From the allegations of the complaint and the affidavits submitted, it appears that from 1939 to 1953, plaintiffs purchased Addo-X adding machines from Addo for resale. In so doing, they developed a list of customers and dealers which, by the year 1953, had considerable trade value. In 1951 and 1952, because of the volume of plaintiffs' business, Addo made various efforts to obtain the names of plaintiffs' customers and dealers, and its president carried on negotiations with plaintiffs in Chicago to make them exclusive distributors of its adding machines for the Greater

Chicago Trading Area, which constituted most of Illinois. Plaintiffs entered into a contract with Addo by which they were appointed its exclusive distributors for such area. The terms of the contract were contained in a letter, dated May 19, 1953, from Addo in New York City, to plaintiffs in Chicago, by which plaintiffs were given the right to purchase the machines at a stated discount from list price, with an additional five per cent discount to provide for dealer development. The letter provided for the cancellation of the exclusive distributorship by either party on three months notice, but in the event of cancellation, plaintiffs were to be given the privilege of continuing to purchase the machines on a dealer basis for a reasonable time. After considerable importuning, on July 24, 1953, plaintiffs gave Addo their list of customers and dealers upon assurance that Addo would fully protect their rights therein.

The complaint further alleges that plaintiffs thereafter entered into various sales efforts in the promotion and sale of Addo's product whereby valuable accounts were obtained; that from 1953 to 1955, plaintiffs purchased machines for resale in Illinois having a retail value in excess of $150,000; that on July 1, 1955, Addo cancelled plaintiffs' exclusive distributorship as of October 1, 1955, and appointed two of plaintiffs' former dealers, the individual defendants, Berg and Hanson, as its distributors, effective August 1, 1955, two months in advance of such effective termination date; that prior to such termination, Addo wrongfully used the plaintiffs' customer and dealer lists by giving them to its newly appointed distributors for the purpose of circularizing their appointment and obtaining plaintiffs' customers and dealers; and that on January 20, 1956, Addo refused to fill any orders of plaintiffs, despite the agreement made that they might continue to purchase machines directly at dealer discount for a reasonable time.

The issues in this case concern the applicability of the 1955 amendments to sections 16 and 17 of the Civil Prac-

tice Act. (Ill. Rev. Stat. 1955, chap. 110, pars. 16, 17.) As amended, those sections authorize the entry of judgments *in personam* on personal service of summons outside the State in enumerated classes of cases.

The applicable part of section 17 is as follows:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this State;
\* \* \*

"(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State.

"(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

"(4) Nothing herein contained limits or affects the right to serve any process in any other manner now or hereafter provided by law."

The pertinent part of section 16 is as follows:

"(1) Personal service of summons may be made upon any party outside the State. If upon a citizen or resident of this State or upon a person who has submitted to the jurisdiction of the courts of this State, it shall have the force and effect of personal service of summons within this State; otherwise it shall have the force and effect of service by publication."

Mr. Chief Justice Stone stated in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S. Ct. 154, 90 L. ed.

95, "Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was a prerequisite to its rendition of a judgment personally binding him," citing *Pennoyer* v. *Neff*, 95 U. S. 714, 733, 24 L. ed 565, 572.

Since *Pennoyer* v. *Neff*, significant social, technological, and legal developments have occurred. These new developments have necessitated a re-examination of former rigid concepts of *in personam* jurisdiction. However, in attempting to re-evaluate the concepts of *in personam* jurisdiction, in the light of changes in our modern complex society, many courts resorted to numerous fictions such as the granting of consent to be sued.

In the *International Shoe Co. case* the court made fiction yield to forthright and realistic considerations of fairness in the determination of what constitutes jurisdiction to determine personal rights. "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties or relations. * * * But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." (at p. 319)

Thus, due process requires only that, in order to subject a defendant to a judgment *in personam,* if he be not

present within the territory of the forum, he must have certain minimum contacts with it so that the maintenance of the action does not offend traditional notions of fair play and substantial justice, and, in addition, that the defendant be properly notified of the action against him so that he may adequately defend himself.

In *Nelson* v. *Miller*, 11 Ill.2d 378, this court held that sections 16 and 17 of the Civil Practice Act reflect a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause. In order to satisfy due process there must be minimum contacts with the State plus adequate notice to defend. There is no doubt that sections 16 and 17 afford adequate notice, since there is provision for personal service.

While the constitutional question is always present in determining whether a State, consistent with due process, can enter an *in personam* judgment against a nonresident defendant, nevertheless it is important to avoid placing the cart before the horse. If, for example, there are no minimum contacts with the State in a particular case, it will be unnecessary to decide whether the State, consistent with due process, can assume jurisdiction, unless the State assumes jurisdiction erroneously, and thereby violates due process.

In the case of *International Shoe Co.* v. *Washington,* a nonresident corporation employed resident salesmen in the State of Washington to take orders for merchandise and to solicit orders, but without authority to enter into contracts in that State. The orders were transmitted to the office of the corporation in St. Louis, Missouri, for acceptance or rejection. The defendant did not deliver goods in Washington, but shipped them F.O.B. from outside the State. The salesmen whom defendant engaged in Washington were hired for full time employment by the defendant, and the salesmen rented display rooms within the State, for the cost of which they were reimbursed by the defend-

ant. Their commissions for the years in question exceeded $31,000 per annum. On these facts, the State of Washington sought to recover unemployment compensation taxes from International Shoe, based upon the compensation paid to its salesmen as commissions during those years. The shoe company was served with notice by personal service upon one of its salesmen within the State and by registered mail at its St. Louis office. The corporation appeared specially to contest the jurisdiction of the State to assess the tax and to challenge the *in personam* jurisdiction of the Washington tribunals. Throughout the State proceedings, the shoe company asserted that the due process clause proscribed the State's legislative jurisdiction and that the due process clause prevented the State from asserting personal jurisdiction over the corporation. After judgment against it in the Washington Supreme Court (22 Wash.2d, 146, 154 P.2d 801,) the shoe company appealed to the Supreme Court of the United States. Mr. Chief Justice Stone speaking for the court stated, "that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. [Citations.] Whether due process is satisfied, must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. *That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties or relations."* (Emphasis supplied.) 326 U.S. 310, at 319.

In upholding the jurisdiction by Washington over the defendant corporation, the United States Supreme Court

decided that the activities carried on in behalf of · International Shoe in the State of Washington were neither irregular nor casual. "They were systematic and continuous throughout the years in question. They resulted in a large volume of interstate business, in the course of which appellant received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its right. The obligation which is here sued upon arose out of those very activities. It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there. Hence we cannot say that the maintenance of the present suit in the State of Washington involves an unreasonable or undue procedure." 326 U.S. 310, 320, 90 L. ed. 95, 104.

In *McGee* v. *International Life Insurance Co.* 355 U.S. 220, 78 S.Ct. 199, 2 L. ed. 2d 223, the United States Supreme Court held that the State of California acquired *in personam* jurisdiction over the defendant foreign corporation by defendant's issuance of an insurance policy to a California resident. The issuance of this single policy was deemed sufficient contact with the State to subject defendant corporation to personal jurisdiction within the State.

We have, indeed, come far from the doctrine of *in personam* jurisdiction enunciated in *Pennoyer* v. *Neff*, 95 U.S. 714. However, as Mr. Chief Justice Warren asserted in *Hanson* v. *Denckla,* 357 U.S. 235, 251, 2 L. ed. 2d 1283, 1296, 78 S. Ct. 1228, "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts."

In the *Hanson case,* the validity of a trust, created in 1935, was contested. The settlor, a resident of Pennsylvania, executed a trust agreement in Delaware and designated a Delaware corporation as trustee. The corpus of

the trust consisted of securities from which the settlor reserved the income for life with remainder to such persons as she might appoint by *inter vivos* or testamentary power, and she reserved the right to change the trustee and amend or revoke the trust at any time.

In 1944, the settlor removed to Florida and lived there until her death in 1952. The assets of the trust remained in Delaware and the trustee performed no acts in Florida. In 1949, the settlor executed a power of appointment whereby $400,000 of the trust remainder was appointed to named trust companies for certain beneficiaries. On the same day, she executed a will giving the residue of her estate, including any interests over which she had power of appointment which had not been effectively exercised prior to her death, to named legatees. Her will was probated in Florida. The Delaware trustee paid out $400,000 to the appointed trust companies in Delaware as provided in the power of appointment.

Months later, the legatees under the will brought an action in a Florida State court for a declaratory judgment as to what property passed under the settlor's will, contending that the power of appointment with reference to the trust was void and that the $400,000 in controversy was a part of the assets of the estate. Service by mail was had upon the Delaware trustee in accordance with the Florida constructive service statute. The Florida Supreme Court affirmed the Florida chancery court's conclusion that the Delaware trust was void under Florida law and the power of appointment ineffective, but reversed the chancellor's ruling that Florida lacked jurisdiction over the trustee and found it unnecessary to determine that question. *Hanson* v. *Denckla*, (Fla. 1956,) 100 So.2d 378.

During the Florida proceedings, a suit was instituted in a Delaware State court seeking declaratory judgment as to who was entitled to the trust assets held in that State. The Delaware chancellor refused to give full faith and credit to

the Florida judgment, and held that the Florida court was without jurisdiction to decide the issue of the disposition of the Delaware trust. The Delaware Supreme Court affirmed the chancellor. *Lewis* v. *Hanson,* (Del. 1957), 128 A.2d 819.

The United States Supreme Court granted *certiorari* in each of the cases and consolidated them for hearing and opinion. It held that, under the facts of the case, Florida could not exercise jurisdiction over the Delaware trustee without violation of the due process clause of the 14th amendment; that under Florida law the Delaware trustee was an indispensable party to the suit; and that the Florida judgment was void and must be reversed. Under the same reasoning the court affirmed the Delaware judgment and held that the Delaware court was not required to give full faith and credit to the Florida judgment, which was void for want of jurisdiction over the trustee and the trust *res,* and therefore offensive to due process.

The majority opinion in *Hanson* v. *Denckla* (See: Kurland, The Supreme Court, The Due Process Clause and the In Personam Jurisdiction of State Courts From Pennoyer to Denckla, 25 U. of Chi. L. Rev. 569, 610, and Brown, The Supreme Court, 1957 Term, 72 Harvard Law Review 77, 195-198,) specifically rejects the notion of a parallel between *forum non conveniens* and the appropriate forum under the due process clause: "Those restrictions [on *in personam* jurisdiction] are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." (357 U.S. 235, at p. 251.) For Mr. Chief Justice Warren and the majority, the test was whether there were sufficient contacts between the nonresident defendant and

Florida to warrant Florida in its exercise of power over him. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [Citation.] The settlor's execution in Florida of her power of appointment cannot remedy the absence of such an act in this case." (357 U.S. 235, at pp. 253-254.)

The decision in the case of *Hanson* v. *Denckla,* was undoubtedly influenced by the fact that the defendant trust company had no office in Florida, and transacted no business there. None of the trust assets had ever been held or administered in Florida, and the record disclosed no solicitation in that State either in person or by mail.

Accordingly, in *Hanson* v. *Denckla,* the case is not one that arises out of an act done or a transaction consummated in the forum State. Although the language of "reasonableness," "fair play," and "minimum contacts" shows that the concepts of *in personam* jurisdiction have been greatly altered since *Pennoyer* v. *Neff, Hanson* v. *Denckla* stands for the proposition that there are still important territorial limitations on a State's power of *in personam* jurisdiction.

In the instant case, Addo contends that it has not subjected itself to the jurisdiction of the Illinois courts. *Hanson* v. *Denckla,* setting out limitations on a State's power in *in personam* jurisdiction, supports this contention.

In the present case, the record shows that the defendant, Addo Machine Company, Inc., is a corporation organized conformably to the laws of the State of New York and domiciled in that State. It is not licensed to do business within the State of Illinois. It manufactures adding ma-

chines outside of Illinois and ships these machines to purchasers throughout the United States. It does not and has not at any time maintained any offices in Illinois, nor employed any officers, agents or employees or other persons within the State. From May 19, 1953, defendant, pursuant to the letter of that date addressed to plaintiffs, began to sell its machines to plaintiffs at a distributor discount rate. The sales were consummated when plaintiffs placed orders with the defendant in New York, and defendant accepted the orders, delivering its product to independent carriers in New York. On or about July 1, 1955, defendant advised plaintiffs that beginning October 1, 1955, they would no longer be exclusive distributors of defendant's products in the Greater Chicago Trading Area, and after the latter date defendant sold its machines at a distributor level and to the individual defendants and to other distributors. Defendant did not at any time own any interest in any corporation, partnership, or individual distributing its products in Illinois, and did not at any time have the right to exercise any control over the distributors; the relationship between defendant and distributor being that of seller and purchaser. After October 1, 1955, the defendant continued to sell equipment to plaintiffs on a dealer price level until January 1, 1956, when it declined to accept any further orders from plaintiffs.

We concur in the conclusion of the Appellate Court that plaintiffs were not doing business in Illinois as defendant's agents. They were independent businessmen in Illinois selling their own merchandise which had been manufactured by the defendant. They were not transacting business for the defendant in Illinois; they were transacting business for themselves. In the case of *International Shoe Co.* the defendant's salesmen were employed in the State of Washington. In *Nelson* v. *Miller,* 11 Ill.2d 378, the defendant's agent was in Illinois and his actvity here gave rise to the injury for which the action was brought.

As recently announced by the United States Supreme Court, in the *Hanson case,* there are still territorial limitations to a State's *in personam* jurisdiction. Since Addo did not have "minimum contacts" with the State of Illinois, we are of the opinion that Addo did not submit to the jurisdiction of the Illinois courts.

Our conclusion that Addo was not transacting business in Illinois renders unnecessary a consideration of its additional contention that the contract of May 19, 1953, between it and plaintiffs was void for lack of mutuality.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE DAVIS, dissenting:

I dissent from the decision of the court which I believe to be an unrequired limitation upon the salutary purpose of sections 16 and 17 of the Civil Practice Act. The opinion finds that the due process clause of the Fourteenth amendment to the United States constitution prohibits the exercise of jurisdiction by the Illinois courts in this case. I do not agree.

Within a three-year period, Addo, a large manufacturing company, shipped $150,000 worth of machines into Illinois. In order to stimulate a greater demand for its products here, it named plaintiffs as its exclusive distributor in the Greater Chicago Trading Area. Addo had close, continuous and important business contacts with the Illinois plaintiffs, its distributors. The contract between the parties contemplated that the plaintiffs would use their efforts to get other persons or corporations in Illinois to engage in the sale of Addo's products, and provided a specific compensation in the form of an additional discount, for plaintiffs' efforts in this respect. The president of Addo negotiated in Illinois to establish this business relationship; it made commitments to plaintiffs concerning activities to be performed almost solely in this State; it exacted from

plaintiffs a list of their dealers in Illinois, and then, for its own benefit, terminated its relationship with the plaintiffs and set up a different method of merchandising.

Regardless of the legal right to control the manner and method of distribution, the sole manufacturer of a product may exert compelling influence on the activities of its distributors by shutting off their source of supply. It is alleged in the complaint that this was done by Addo in violation of the terms of the contract between the parties. While Addo contends that the legal nature of the distribution was merely one for the sale of goods, it is charged in the complaint that there was a continuing relationship between Addo and the plaintiffs which extended beyond that of buyer and seller and in this case the contract specifically provided, as the opinion of the court points out, for "dealer development."

Under the allegations of the complaint, the individual defendants, Berg and Hanson, Illinois residents, with full knowledge of plaintiffs' contractual relationship with Addo, wrongfully induced the termination and breach of Addo's contract with plaintiffs by causing their own appointment as Addo's distributor, by participating in and adopting the benefit of the list of dealers supplied by plaintiffs to Addo, by interfering with customer relations between plaintiffs and certain of their valuable accounts, and by causing Addo to breach its contract to continue plaintiffs as a dealer of Addo-X adding machines for a reasonable time following any termination of plaintiffs' contract of distributorship. The presence of the individual resident defendants, as parties, argues in favor of jurisdiction, as does the inability of plaintiffs to join them as parties defendant in any proceedings instituted against Addo in the State of New York.

The cause of action sought to be enforced arises out of activities in this State in connection with this relationship. This is not an action by a third party arising out of the sale

of Addo's machines by plaintiffs. Rather, it is the business relationship between the plaintiffs and Addo which constitutes the qualifying contact with the forum.

I submit that these facts constitute minimum contacts with the forum required by *International Shoe Co.* v. *Washington*, 326 U.S. 310, 90 L. ed. 95. Addo's ties with Illinois were at least as great as in *McGee* v. *International Life Insurance Co.* 355 U.S. 220, 2 L. ed. 2d 223; *Perkins* v. *Benguet Consolidated Mining Co.* 342 U.S. 437, 96 L. ed. 485, and *Travelers Health Association* v. *Virginia,* 339 U.S. 643, 94 L. ed. 1154.

I am convinced that this court was right in *Nelson* v. *Miller,* 11 Ill.2d 378, 389, where it stated: "Sections 16 and 17 of the Civil Practice Act reflect a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause." This view is supported by the commentators on the section. (Cleary and Seder, Extended Jurisdictional Bases for Illinois Courts, 50 N.U.L.R. 599; Joint Committee Comments, Smith-Hurd. Anno. Stat., chap. 110, par. 17, p. 164; Jenner and Tone, Historical and Practice Notes, Smith-Hurd Anno. Stat., chap. 110, par. 17, p. 165; Expanded Concepts of State Jurisdiction over Nonresidents, O'Connor & Goff, 31 Notre Dame Lawyer, 223.) In *Nelson* we noted that with the change of social, technological, and legal developments, the rigid concepts of *Pennoyer* v. *Neff* yielded to fiction, and fiction in turn yielded to the realistic considerations of fairness under the minimum contact doctrine established by *International Shoe.* And, at page 384 we stated: "The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of the State's legitimate protective policy. The limits on the exercise of jurisdiction are not 'mechanical or quantitative' (*International Shoe Co.* v *Washington,* 326 U.S. 310, 319 (1945),) but are to be

found only in the requirement that the provisions made for this purpose must be fair and reasonable in the circumstances, and must give to the defendant adequate notice of the claim against him, and an adequate and realistic opportunity to appear and be heard in his defense."

The legislature did not restrict such jurisdiction to actions arising out of express contracts, but has extended the jurisdictional basis to the transaction of any business within the State. (Ill. Rev. Stat. 1957, chap. 110, par. 17(1)(a).) This should be construed to include any business activity sufficient to create the essential minimum contacts with the forum.

The United States Supreme Court has come far from the doctrine of *in personam* jurisdiction enunciated in *Pennoyer* v. *Neff,* 95 U.S. 714, but as I read the opinion in the case at bar, I cannot but believe that this court is again dealing with the early historic legalistic definition of "doing business" rather than with the concept of "minimal contacts" established in *International Shoe* and *McGee.*

There is nothing in *Hanson* v. *Denckla,* 357 U.S. 235, 2 L. ed. 2d 1283, which either requires this result, or justifies the court's timorous approach to the practical aspects of *in personam* jurisdiction. If, as we held in *Nelson,* "The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of the State's legitimate protective policy," then this court should not needlessly render Illinois courts impotent to serve our residents by reason of a supposed compulsion stemming from the Fourteenth amendment. That *Hanson* involves an entirely different problem is apparent from the discussion of that case in the court's opinion.

In *International Shoe,* 326 U.S. 310, at page 319, Chief Justice Stone, speaking for the court, stated: "But to the extent that a corporation exercises the privilege of con-

ducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

I would sustain jurisdiction, reverse the trial court and remand the cause with directions to deny the motion to quash.

Mr. JUSTICE SCHAEFER joins in this dissent.