**NATIONAL GAS APPLIANCE CORPO-RATION, a Delaware corporation, Plaintiff-Appellee,**

v.

**AB ELECTROLUX, a Swedish corporation, Defendant-Appellant.**

No. 12587.

United States Court of Appeals Seventh Circuit.

Sept. 24, 1959.

Walter J. Cummings, Jr., Chicago, Ill., Kenneth F. Burgess, Harlowe E. Bowes, William M. McGovern, Jr., Chicago, Ill., Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel, for appellant.

John J. Kelly, Jr., Francis B. Stine, John J. Kelly, George Gilman Kelly, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Pursuant to leave granted, AB Electrolux, a Swedish corporation, herein also called defendant, has appealed from an order of the district court denying its motion to dismiss the action brought by National Gas Appliance Corporation, a Delaware corporation, herein referred to as plaintiff, or alternatively to quash the return of service of summons herein.[1]

Plaintiff's complaint named as an additional defendant The Manitowoc Company, Inc., a Wisconsin corporation. It is not a party to the motion to dismiss, or to this appeal.

Count I charges a breach of contract by defendant, count II is directed against The Manitowoc Company only, while count III sounds in tort and asserts a conspiracy against plaintiff on the part of defendant and The Manitowoc Company.

On this appeal the relevant facts appear in the complaint, as amended, in affi-

---

1. This action was commenced in an Illinois state court and was removed to the district court.

davits accompanying defendant's motion to dismiss and in affidavits filed by plaintiff in opposition to that motion.

The terms of the contract involved in count I appear in a letter dated January 21, 1958, mailed by defendant, from Stockholm, Sweden, to plaintiff's president, in Chicago, Illinois, as accepted on January 29, 1958 by plaintiff's telegram to defendant. On oral argument, counsel for defendant stated that we may assume for the purpose of this appeal that the receipt of this letter and this telegram respectively constituted the making of a contract. Thereby, in effect, defendant agreed to sell plaintiff cooling units, functioning on natural or manufactured gas, which units were to be shipped to the United States for installation in refrigerator cabinets manufactured for plaintiff in this country. The assembled product was then to be marketed by plaintiff throughout the United States.

The making of said contract followed mail, telephone and telegraph negotiations between the parties beginning in August 1957. In addition thereto, plaintiff relies particularly on the acts of chief engineer Hugo Ullstrand of defendant and Edmund A. Fenander, of New York City, referred to by Mr. Ullstrand as "our United States representative".

About October 29, 1957 Ullstrand came to plaintiff's place of business in Chicago in connection with the problem of fabricating a cabinet to house the Electrolux unit. He spent there about four days, as well as several evenings. He went to Aurora, Illinois, and saw tests made on sample cabinets and was taken by plaintiff's men to the Peoples' Gas Light and Coke Company plant and offices where they and Ullstrand conferred with officers of that company. During his stay in Chicago he discussed with representatives of plaintiff many details to be incorporated in the proposed contract with defendant, the making of which depended on plaintiff's being able to fabricate a box to house its unit.

Immediately upon his return to Stockholm, Ullstrand, on November 12, 1957, wrote to plaintiff's president a lengthy letter, discussing the results of the aforesaid tests. He made suggestions for further tests, and expressed himself in favor of "the arrangement shown in the attached drawing C–390056".

On January 28, 1958, Ullstrand again came to Chicago to discuss the engineering features of a cabinet, about the manufacture of which plaintiff had contacted The Manitowoc Company, as well as to discuss the plans for fabrication of the complete unit at its factory. He wanted to help plaintiff with remaining problems in the perfection of the refrigerator. He was accompanied to Chicago by Fenander. Fenander said that he traveled over the United States for defendant investigating new processes and negotiating with suppliers for products and materials that could be used by defendant in its manufacturing business.

Ullstrand spent all of January 29, 1958 in plaintiff's offices in Chicago, talking to its president about the manufacture of the refrigerator and cabinets, and called a consultant, Dr. Robert S. Taylor, formerly chief engineer of Servel, Inc., from plaintiff's office and discussed certain of plaintiff's problems, one being the adjustment of the gas burner.

On January 30, 1958, Ullstrand and plaintiff's president flew to The Manitowoc Company in Wisconsin and inspected the cabinet being fabricated around an Electrolux unit for plaintiff, returning to Chicago that evening.

Ullstrand had brought from Sweden and delivered to plaintiff an Electrolux burner and gas control device, adapted to the units to be sold by his company to plaintiff. After lunch on January 31, 1958 Ullstrand and plaintiff's president went to a laboratory in Chicago for tests on the Electrolux gas burner and control.

On February 10, 1958, defendant cabled to plaintiff: " * * * further damaging information your financial background and dealings forces us withdraw offer forthwith we consequently unable deal with you."

Relying upon this cablegram as a breach of contract, plaintiff sues defendant in count I for damages.

■ 1. Defendant contends that the district court erred in denying its motion to dismiss the action of plaintiff for want of jurisdiction of defendant. It relies on § 17(1)(a) of the Illinois Civil Practice Act, 1955 (§ 17(1)(a), Ch. 110, Ill.R.S. 1957), which reads:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, * * * to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this State;

"(b) The commission of a tortious act within this State; * *".

Under the assumption of defendant's counsel, ante, defendant's letter of January 21, 1958 to plaintiff and the latter's telegram of acceptance on January 29, 1958 constituted a contract. It is that contract upon which plaintiff bases count I, claiming a breach. That contract was the culmination of negotiations, conferences, contacts and meetings between the agents of plaintiff and defendant. A substantial part thereof occurred in the state of Illinois. While defendant argues in this court that its chief engineer Ullstrand did not come to Chicago to negotiate any contract, but to discuss technical engineering problems, the evidence is uncontradicted that both he and defendant's United States representative, Fenander, in Illinois, at plaintiff's plant and elsewhere, were busily engaged in satisfying plaintiff that it would be advantageous for it to use defendant's cooling units. Their efforts were obviously directed toward the consummation of the contract in question.

These acts of defendant's representatives, which occurred in Illinois, constitute at least such minimal contacts with that state that the maintenance of this suit there does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. Cf. Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283; Orton v. Woods Oil & Gas Co., 7 Cir., 249 F.2d 198; Kaye-Martin v. Brooks, 7 Cir., 267 F.2d 394; Grobark v. Addo Machine Co., 16 Ill.2d 426, 158 N.E.2d 73.

We are not at this time concerned with the merits of this case. We merely hold that the district court, under Illinois law, has jurisdiction of the cause of action asserted against the defendant AB Electrolux in this case.

■ 2. In its brief, plaintiff asserts that count III of its complaint, as amended, "charges in tort that Electrolux and Manitowoc *conspired* to bypass plaintiff and by themselves assemble and sell gas refrigerators in this country, to the complete exclusion of plaintiff from the refrigeration field". (Italics supplied.) However, a careful reading of count III reveals that an attempt to make a charge of conspiracy is abortive. After realleging by reference many parts of counts I and II, count III in paragraph 23, alleges:

"Defendant, Electrolux, *in its refusal and neglect to perform its contract with plaintiff* has willfully, maliciously and unlawfully conspired, combined and confederated by and with Manitowoc to refuse to permit plaintiff to proceed with its marketing and sale throughout the United States of gas refrigerators. * *" (Italics supplied.)

It is then charged that "the said conspiracy" caused plaintiff to be required to abandon its marketing of said refrigerators, to its loss and damage, etc.

It will be noted that there is no allegation that a combination or conspiracy was entered into between Electrolux and Manitowoc to interfere with plaintiff's marketing of gas refrigerators. The

charge is that the alleged *fact* that defendant refused and neglected to perform its contract with plaintiff *in itself* was a conspiracy, combination or confederation by and with Manitowoc to interfere with plaintiff's marketing of refrigerators. Where plaintiff is attempting to establish jurisdiction, as to count III, over defendant, in Illinois, it is incumbent upon it to conform to the requirement that it must first allege a conspiracy followed by an allegation of overt acts committed in pursuance thereof. Kovar v. Bremer, 294 Ill.App. 225, 231, 13 N.E.2d 656; Brictson v. Woodrough, 8 Cir., 164 F.2d 107, 109. Only by so doing can it effectively plead a conspiracy count upon which the court can determine whether there is jurisdiction in a court in Illinois over the person of defendant. Count III is not so drawn and for that reason we hold that it does not state a cause of action against defendant enforcible in Illinois.

Hence the judgment of the court below is reversed as to count III and the cause is remanded with instructions to dismiss said count III, at plaintiff's costs.

3. By its motion to quash service of summons, defendant takes the position that Edmund A. Fenander, hereinabove referred to, upon whom summons in this case was served in New York City, was not authorized by defendant to accept service of process and that consequently said service cannot be sustained.

Relevant statutory provisions are contained in R.S.Ill. Ch. 110, 1957, as follows:

"§ 13.3. Service on private corporations. A private corporation may be served (1) by leaving a copy of the process with * * * any * * * agent of said corporation * * *.

"§ 16. Personal service outside State. (1) Personal service of summons may be made upon any party outside the State. If * * * upon a person who has submitted to the jurisdiction of the courts of this State, it shall have the force and effect of personal service of summons within this State; * * *.

"(2) The service of summons shall be made in like manner as service within this State, * * *.

"§ 17. Act submitting to jurisdiction—Process.

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person * * * to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this State; * * *

"(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State."

The facts hereinbefore set forth show the relationship of Fenander to defendant.

We hold that he was an agent for service on defendant, within the meaning of §§ 13.3, 16 and 17. The affidavit of a deputy sheriff of the city of New York shows that he personally served a summons upon defendant by delivering a true copy thereof personally to Fenander. This was all that was required. The district court did not err in refusing to quash the service of summons on defendant.

For the reasons hereinbefore set forth, insofar as count III is concerned, the order from which the appeal has been taken is reversed and the cause is remanded to the district court with instructions to dismiss said count III, at plaintiff's costs, and in all other respects said order is affirmed.

In part affirmed and in part reversed and remanded with instructions.