The PURDY COMPANY, Plaintiff-Appellant,

v.

ARGENTINA, a foreign state, and Direccion General De Fabricaciones Militares of Argentina, Defendants-Appellees.

No. 14526.

United States Court of Appeals
Seventh Circuit.

June 11, 1964.

Rehearing Denied July 14, 1964.

Stephen A. Milwid, Ralph O. Clare, Chicago, Ill., Stephen H. Cohen, Chicago, Ill., Lord, Bissell & Brook, Chicago, Ill., of counsel, for appellant.

Bernard S. Kaplan, Chicago, Ill., George C. Pendleton, Washington, D. C., Culbertson, Pendleton & Pendleton,

**96**

Washington, D. C., of counsel, for appellees.

Before SCHNACKENBERG, CASTLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

The Purdy Company, plaintiff-appellant, brought suit in the District Court against Argentina and Direccion General De Fabricaciones Militares of Argentina,[1] defendants-appellees, to recover monies allegedly due under a contract for the sale and delivery of steel scrap. The contract, made in Buenos Aires, Argentina, called for delivery of the steel at Buenos Aires consigned to DGFM. It contains a "Manner of Payment" clause requiring DGFM to establish a letter of credit upon the First National Bank of Chicago in favor of plaintiff. Conditions precedent to payment include presentation of the following documentation:

"(1) Complete set of Bills of Lading, issued on the basis of a freight contract, listing the goods aboard and below deck, freight prepaid (Original and two copies).

"(2) Commercial Invoice, in quadruplicate (Original and Duplicate) establishing the C.&F. value of the goods in Buenos Aires, duly legalized by an Argentine Consul.

"(3) Argentine Consular Invoice, in triplicate, duly legalized."

The record discloses that DGFM established the letter of credit and that plaintiff furnished the required documents which were "legalized" or authenticated by the Argentine consul at Chicago, Illinois.

Summonses to each of the defendants were served on the Argentine consul at Chicago. This service was quashed as to DGFM and an alias summons was then issued and served on DGFM at Buenos

Aires. Such service was also quashed on the motion of DGFM and thereafter DGFM was dismissed as a party to the action. A default judgment entered against Argentina was vacated on its special and limited appearance and motion to quash the service of process and to dismiss. The service on Argentina was quashed and the action dismissed.

Plaintiff's appeal from the judgment orders vacating the default judgment against Argentina, quashing the service of the summonses, and dismissing the action precipitates two main contested issues:

(1) Whether service upon the Argentine consul at Chicago conferred *in personam* jurisdiction over Argentina, a sovereign foreign state, and such jurisdiction over DGFM.

(2) Whether extra-territorial service of summons on DGFM at Buenos Aires was effective to obtain *in personam* jurisdiction over DGFM.

Plaintiff contends that the function performed by the Argentine consul at Chicago in authenticating the documents required to be presented as a condition of payment made the consul an agent of his government and of DGFM for the purpose of service of process and that the establishing of the letter of credit on the Illinois bank and payments made thereunder on authentication of the documents in Illinois constituted transaction of business in Illinois so as to authorize the extra-territorial service of summons on DGFM at Buenos Aires under the provisions of Rules 4(f) and 4(d) (7) of the Federal Rules of Civil Procedure (28 U.S.C.A.) and Section 17(1) (a) of the Illinois Civil Practice Act (Ill.Rev.Stat. 1963, ch. 110, § 17(1)(a)).

█ In connection with its contention that the service of summons on the Argentine consul was effective to obtain jurisdiction over Argentina the plaintiff urges that the purely commercial nature

---

1. An Argentine corporation, referred to herein as DGFM. The complaint alleges that Argentina made the contract here involved "by and through" DGFM "a department of the government" of Argentina through which Argentina owns and operates the steel manufacturing industry of that country.

of the transaction involved calls for application of the restrictive immunity doctrine—the doctrine underlying the policy of the Department of State, as expressed in the "Tate Letter",[2] of not suggesting to the courts that a sovereign be granted immunity from suit where the action arises out of commercial activities of the foreign state. Plaintiff asserts that unless the foreign nation's consul is recognized as its agent for the service of process in such actions the doctrine of restrictive immunity would be rendered meaningless since no action would ever be maintainable without first obtaining the consent of the sovereign. The conclusion plaintiff thus attempts to draw overlooks the area in which the doctrine otherwise can have full recognition and application—cases in which *in rem* jurisdiction exists and those situations in which the foreign state invokes jurisdiction of the court and thereby subjects itself to a counterclaim to which the doctrine is applicable. Moreover, the issue here is one of acquisition of jurisdiction, not that of a limitation on a release from jurisdiction already acquired in recognition of privilege accorded a sovereign foreign state. We perceive no relevance of the doctrine of restrictive immunity to the issue here involved.

Apart from the fact that Rule 4 of the Federal Rules of Civil Procedure makes no provision for service upon a foreign government, it is recognized that a foreign consul is not by virtue of his office an agent of the government he represents, or of its citizens whom he may serve, for the purpose of service of process. Oster v. Dominion of Canada, (N.D. N.Y.1956), 144 F.Supp. 746, aff. 238 F. 2d 400, cert. den., 353 U.S. 936, 77 S.Ct. 813, 1 L.Ed.2d 759; In re Herman's Estate, 159 Minn. 274, 198 N.W. 1001. In Oster it was held that service on a consul is not effective to obtain *in personam* jurisdiction over the sovereign state he represents. And in Herman it was pointed out that the functions of a consul in the protection of the interests of the citizens of the country he represents do not, in the absence of specific authorization, constitute him their agent for service of process.

The Argentine consul at Chicago was not by law or specific appointment the agent of either of the defendants for service of process. He was but the particular Argentine consul selected by the plaintiff, pursuant to the contract, to perform a normal routine duty of a consul in authenticating the documents required to be presented in connection with obtaining payment under the contract's provisions. The record does not support a conclusion that the consul became an agent of DGFM for the purpose of service of process. The service on the consul did not confer *in personam* jurisdiction over either of the defendants and the District Court did not err in quashing that service.

We turn to consideration of whether the extra-territorial service made on DGFM in Buenos Aires was effective to confer *in personam* jurisdiction over that defendant. Plaintiff contends, in substance, that by establishing the letter of credit with the Illinois bank for the purpose of paying the purchase price in performance of its part of the contract, and in requiring that the bills of lading and invoices to be presented as conditions precedent to such payments be "duly legalized" by an Argentine consul, DGFM supplied prerequisite minimal contacts in the transaction of business in Illinois which subject DGFM to the jurisdiction of the District Court. Rules 4(f) and 4(d) (7) of the Federal Rules of Civil Procedure recognize the validity of extra-territorial service made in the manner prescribed by a valid enactment of the state in which the district court is held.

2. 26 Dept. State Bull. 984–985 (1952). In this connection it is noted that the record indicates that the instant suit was brought to the attention of the State Department and a claim of sovereign immunity asserted. But the record discloses no intervention by the State Department suggesting that immunity from the suit be granted.

And plaintiff relies upon Section 17(1)(a) of the Illinois Civil Practice Act, which authorizes extra-territorial service where the cause of action arises from the person's "transaction of any business" within Illinois, as authorizing the service made on DGFM in Buenos Aires. We have had occasion to point out that although the Illinois statute has widened considerably the bases for service on nonresident defendants in *in personam* suits there still remain important limitations on a state's power to extend jurisdiction beyond its territorial limits. Trippe Manufacturing Company v. Spencer Gifts, Inc., 7 Cir., 270 F.2d 821, 822–823. See also: Schmidt v. Esquire, Inc., 7 Cir., 210 F.2d 908; National Gas Appliance Corp. v. AB Electrolux, 7 Cir., 270 F.2d 472; Insull v. New York World-Telegram Corporation, 7 Cir., 273 F.2d 166; and Edwin Raphael Company, Inc. v. Maharam Fabrics Corporation, 7 Cir., 283 F.2d 310, in which the scope and application of the Illinois statute was considered and the "minimal contacts" requirement of due process recognized.

Likewise, the Illinois Supreme Court in Grobark v. Addo Machine Co., Inc., 16 Ill.2d 426, 158 N.E.2d 73, in keeping with the rationale of Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, has in construing the "transaction of any business within this State" provision of the statute held that sales of machines over an extended period by a New York corporation to an Illinois dealer, appointed its exclusive distributor for a designated area, did not make the corporation amenable to extra-territorial service in a suit by the dealer. It was pointed out that the New York corporation was not licensed to do business in Illinois; maintained no office in Illinois; had no officers, agents or employees within the state; and that the relationship between the plaintiff and the corporation was purely one of purchaser and seller. It was held that the corporation did not have the "minimal contacts" requisite to subject it to the jurisdiction of the Illinois courts—that it was not transacting business in Illinois.

█ In our opinion Grobark is controlling in the instant case. In so far as the record discloses DGFM maintains no contacts with Illinois and the contract involved represents but an isolated transaction in which the relation between DGFM and the plaintiff is merely that of purchaser and seller. The arrangement to make the contract payments through utilization of a letter of credit on an Illinois bank and to require plaintiff to secure consular authentication of the bills of lading and invoices to be presented as conditions precedent to payment does not in our opinion constitute the transaction of business in Illinois by DGFM within the meaning and purpose of the statute here involved or supply the "minimal contacts" essential to a valid assertion of extra-territorial jurisdiction. A nonresident purchaser from an Illinois vendor, without other contact with Illinois, is not by reason of such payment device subjected to jurisdiction of the Illinois courts and thus made amenable to extra-territorial service of process.

Nothing in the record before us discloses that DGFM has purposefully availed itself of "the privilege of conducting activities within the forum State, [Illinois] thus invoking the benefits and protection of its laws". Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240. The District Court did not err in quashing the extra-territorial service on DGFM.

█ Jurisdiction over the persons of the defendants was not acquired by the service of process here made and since there appears to be no chance of curing the defect by proper service of process it was not error to dismiss the action. Oster v. Dominion of Canada, supra.

The judgment orders of the District Court appealed from are affirmed.

Affirmed.