**SUN–X INTERNATIONAL COMPANY, Inc.,**
**Appellant,**

**v.**

**Arthur J. B. WITT, Appellee.**

**No. 7797.**

Court of Civil Appeals of Texas.

Texarkana.

March 7, 1967.

Rehearing Denied April 4, 1967.

Arthur L. Forbes, Houston, for appellant.

James C. Slaughter, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellee.

FANNING, Justice.

Plaintiff-appellant, Sun-X International, Inc., a Texas corporation, with its principal offices in Houston, Harris County, Texas, filed suit in a District Court of Harris County, Texas, against defendant-appellee, Arthur J. B. Witt, a resident of California, alleging breach of a certain distributor-dealer contract. Service of process was effected upon defendant-appellee under Art. 2031b, Vernon's Tex.Rev.Civ.Stat.Ann. Defendant-appellee, pursuant to Rule 120a, Tex.R.Civ.P., filed his special appearance objecting to the trial court's in personam jurisdiction on the ground that he was not amenable to the process issued by the Texas court. The trial court, after hearing the evidence adduced, sustained appellee's special appearance, and dismissed plaintiff-appellant's suit for want of personal jurisdiction over defendant-appellee. Plaintiff-appellant has appealed.

The trial court filed findings of fact and conclusions of law, to-wit:

## "FINDINGS OF FACT

"1. Plaintiff, a Texas corporation, sued defendant, an individual who resides in the State of California for actual and exemplary damages for breach of a distributor-dealer contract. Plaintiff does not attempt to recite in such pleadings what the breach consisted of and sues for a lump sum representing actual and exemplary damages. Service was made upon the defendant under Article 2031(b) TRCS and defendant made a special appearance and challenged the jurisdiction of the Court.

2. In August of 1964 the defendant received a solicitation from L. L. Brown, an employee of plaintiff, from a California telephone location, in the interest of getting defendant to accept a dealership relationship with plaintiff, covering its products and in response to such solicitation the defendant signed plaintiff's distributorship-dealer contract on August 24, 1964 in California, such contract, together with Exhibits, being Plaintiff's Exhibits 1, 2 and 3.

3. Such distributor-dealer contract was accepted by Mr. Don R. Manthey in Houston Harris County, Texas, in keeping with the provisions of the contract.

4. The contract authorizes the defendant to serve as dealer within the prescribed limits of California for plaintiff's product, a liquid plastic material applied to plate glass surfaces. The contract further provides for the purchase of delineated materials to the extent of $5,952.00, which sum was deposited with L. L. Brown at the time the distributorship-dealer contract was executed.

5. Additionally, the contract provides for the defendant to purchase a certain gallonage of plaintiff's plastic material during each succeeding twelve months period, beginning six months after date of execution and for such gallonage to increase for successive periods. The contract does not provide where payment for such material is to be made or where such material is to be shipped.

6. Plaintiff made shipments in keeping with the terms of the contract from Houston, FOB that point, and on subsequent dates the plaintiff made material shipments, FOB Houston, Texas, to defendant, in response to orders.

7. In keeping with contractual provisions plaintiff printed and published pertinent bulletin service material and mailed them to defendant and correspondence was exchanged between an employee of plaintiff and defendant, advising, among other things, some of the problems and techniques applicable to effect marketing of plaintiff's product.

8. The contract provides that plaintiff will keep defendant informed through a dealer bulletin service and that national advertising shall be made by plaintiff of the product to be distributed by defendant and plaintiff conducted a direct mail campaign from Houston in connection with the marketing of its product in California, such activity being designed to redound to the benefit of plaintiff and defendant through encouragement of product acceptance.

9. All marketable material and advertising and promotional media were dispatched FOB Houston and all activities on the part of defendant in the interest of marketing through dealerships of plaintiff's product occurred in California and the defendant has never resided in Texas, has not been in Texas at any time material to any of the inquiries involved in this litigation, maintains no office or agent in Texas, and has never conducted any business undertaking in Texas incident to plaintiff's business, beyond the extent set forth above.

"CONCLUSIONS OF LAW

"1. Defendant did not purposefully do any act or consummate a transaction in the State of Texas, the acceptance of the contract in Texas, the shipments and mailings from Texas being insufficient to satisfy such requirements and therefore 'minimal contact' was wanting.

2. Plaintiff failed to show by pleading and evidence that plaintiff's cause of action for breach of contract arose out of any act or consummated transaction in the State of Texas, if it be considered that there was such an act.

3. The assumption of jurisdiction by the Court in which this cause pends under the attending facts aforesaid, would offend traditional notions of fair play and substantial justice, after considering the quality, nature and extent of the defendant's activity as same relates to Texas and the relative convenience of the parties, the benefits and protection of the laws of Texas afforded the parties and the basic equities of the situation.

4. Therefore this suit cannot be said to be one to enforce an obligation that arose from a privilege the defendant exercised in Texas.

5. If Section 4, Article 2031(b) is to receive a literal interpretation and therefore a part of the overall contractual obligation is performable in Texas, which is true here, will vest jurisdiction over the defendant, such provision violates the due process clause of the 14th Amendment and is unconstitutional."

The trial court also filed additional findings of fact and conclusions of law shown below.[1]

Appellant on appeal contends that the trial court erred in failing to specifically find that appellee's activities were of the nature and kind contemplated by Article 2031b, §§ 3 and 4, Texas.Rev.Civ.Stat.Ann. Appellee by his first counterpoint contends that Art. 2031b, Tex.Rev.Civ.Stat.Ann., does not authorize service on the appellee because it was intended to apply only to the fullest permissible reach under the United States Constitution and its application under the facts in this case would violate the due process clause of the 14th Amendment to the U. S. Constitution, and that therefore the trial court did not err in holding that Art. 2031b, was inapplicable to confer in personam jurisdiction over appellee. By his second counterpoint appellee contends

that the trial court did not err in holding Art. 2031b, Tex.Rev.Civ.Stat.Ann., unconstitutional when applied to the facts of the case at bar.

For a comprehensive analysis of Art. 2031b, Tex.Rev.Civ.Stat.Ann., and Rule 120-a, Tex.R.Civ.P., see Thode, In Personam Jurisdiction; Art. 2031b, the Texas "Long Arm" Jurisdiction Statute; and the Appearance to Challenge Jurisdiction in Texas and Elsewhere, 42 Texas Law Review 279, 303–310 (1964). Also in this connection see Wilson, In Personam Jurisdiction over Non-residents; An Invitation and a Proposal, 9 Baylor Law Review 363 (1957); Counts, More on Rule 120a, 28 Texas Bar Journal, 95, 96 (February 1965).

From the evolution of the decisions of the U. S. Supreme Court with respect to service on non-resident defendants in *in personam* actions from Pennoyer v. Neff, (1877), 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565, through International Shoe Co. v. State of Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Ins. Co. (1957), 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; and Hanson v. Denckla (1958), 357 U.S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283, we think it can be

1.    "FINDINGS OF FACT
"1. That Don. R. Manthey was the vice-president of Sun-X at the time he accepted the distributor-dealer contract on behalf of Sun-X.
2. Sun-X's dealer bulletin service was edited, published and printed in Houston, Harris County, Texas.
3. Sun-X conducted the research and development work referred to in the distributor-dealer contract in Houston, Harris County, Texas.
4. Sun-X printed the advertising and promotional material called for in the distributor-dealer contract in Houston, Harris County, Texas.
5. Sun-X printed the stationery items and other printed forms called for in the distributor-dealer contract in Houston, Harris County, Texas.
6. The request, being numbered 6 in Plaintiff's 'Requested Additional Findings of Fact', is denied for such is not pertinent to any issue tendered for decision in this cause and evidence relating to the

subject matter of such request was not admitted into the record because of pertinency thereof.
"ADDITIONAL CONCLUSIONS OF LAW
"1. The first Requested Conclusion of Law is not subscribed to and is not made in this cause and was not intended to be encompassed by any previous Conclusion of Law made. The Conclusion of Law incorporated in paragraph 5 of the previous filing by the Court was intended to embrace law pronouncements as contained in Lone Star Motor Import v. Citroen Cars Corporation [D.C.], 185 F Sup 48 (reversed on other grounds [5 Cir.] 288 F(2d) 69).
2. Defendant Witt did not have substantial connection with the State of Texas and therefore to require him to defend Plaintiff's cause of action in a Texas forum would deprive him of the due process of law guaranteed by the 14th Amendment of the Constitution of the United States."

said that it is now the law that there are three basic factors which should coincide if jurisdiction over a non-resident defendant is to be entertained, to-wit: (1) The non-resident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. In this connection see O'Brien v. Lanpar Co., 399 S. W.2d 340 (Tex.1966).

■ The factors to be considered in determining whether or not there have been minimum contacts with the forum are stated in Hearne v. Dow-Badische Chemical Company, 224 F.Supp. 90 (S.D.Tex.1963) as follows:

"(1) The nature and character of the business;

(2) The number and type of activities within the forum;

(3) Whether such activities give rise to the cause of action;

(4) Whether the forum has some special interest in granting relief; and

(5) The relative convenience of the parties."

We quote from Professor Thode's article, supra, 42 Tex.Law Review p. 301–2–3, in part as follows:

"The McGee decision was thought by some writers to establish the proposition that suit based on any business contact with the state of the forum would be sufficient to support personal jurisdiction over a non-resident defendant, assuming proper out-of-state notice. The 1958 decision of the Supreme Court of the United States in Hanson v. Denckla demonstrates that such an interpretation is too broad. In Denckla it was pointed out that McGee involved an insurance contract, and that the business of insurance, like that of control of motor vehicle traffic on the highways and the selling of securities, is something that falls within the permissible scope of regulation under the state's police power. The defendant in Denckla was a corporate Delaware trustee who was being sued in Florida. The defendant's contacts with Florida consisted of correspondence which primarily involved remitting trust income to the donor who had moved to Florida after setting up the trust, and in making changes in instruments at the request of the donor in Florida. The Supreme Court held that there were not sufficient contacts for the Florida court to obtain jurisdiction over the nonresident trustee by out-of-state service.

" 'The unilateral activity of those who claim some relationship with a nonresident cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws * * *.'

"The Supreme Court also issued general words of caution:

" 'It is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1 L.Ed.2d 1456, 1459. These restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial

limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has the "minimal contacts" with that State that are a prerequisite to its exercise of power over him.'

" * * *

"In summation, there are limits upon the power of a state to bring a nonresident defendant-individual or corporate into the courts of that state on the basis of out-of-state service. 'Doing business' is still the test for state regulation, but the limits on jurisdiction for the purpose of suing a nonresident are greatly enlarged. These limits are determined by the 'minimum contacts' test, and the contacts cannot be merely fortuitous, but must be purposefully made by the defendant. Further, the litigation must grow out of these contacts, and notice must be properly given to defendant."

It is undisputed that appellee is a resident individual of California and that he had no office, agents or employees in Texas and had not been in the State of Texas for any reason at any time pertinent to the inquiry here. On the other hand, appellant was a Texas corporation and an international distributor for DuPont glass tinting products and it sends agents and employees throughout the United States and 40 or 50 foreign countries to solicit dealerships for its products. Appellee had never heard of appellant until a representative of appellant called him in California about appellee becoming a dealer in appellant's products in a certain territory in California. All of the negotiations surrounding the signing of the distributor-dealer contract in question occurred in California and appellee paid $5,952.00 by check delivered to appellant's agent in California at the time of the signing there. This check was in payment of goods and services to be provided by appellant to appellee. The contract was signed by appellee and appellant's representative in Califor-

nia at the time the check was delivered; the contract also provided that it would not be valid until accepted by appellant. Appellant's employee sent the check and contract to appellant in Houston, Harris County, Texas, where the appellant accepted the contract and check, which check was paid.

Pursuant to the contract, appellee was granted a license or franchise for appellant's goods only in certain areas of California. Appellee did not distribute appellant's goods or solicit customers for those goods in Texas. A representative of appellant traveled to California and there trained appellee to apply appellant's products. The contract provided that appellee commencing 180 days after acceptance was to purchase from appellant a certain amount of goods per month, and that under certain circumstances appellant could terminate the contract. The contract was accepted August 27, 1964. Appellant filed suit alleging in general terms that appellee breached the contract on December 16, 1964, (less than 180 days from the date of the acceptance of the contract) and which date was not within the period of time appellee was to purchase goods or materials from appellant other than those paid for by the check previously given by appellee to appellant's employee in California. Pursuant to the contract, appellant printed certain material and provided services in mailing same for appellee. The contract did not specifically provide that appellant was to pay anything to appellee in Houston, Harris County, Texas.

Appellant, among other things, contends that because the contract provided that it was not valid until accepted and that such acceptance occurred in Houston, Harris County, Texas, that same had the effect of the defendant purposefully doing some act or consummating some transaction within the forum State of Texas, which would amount to such a "minimal contact" sufficient to satisfy the requirements of the 14th Amendment to the U. S. Constitution.

We do not believe that the entering into the contract by the appellee under the circumstances of this case was such a "purposeful act" which would sufficiently satisfy the requirements of "minimal contacts" required by the 14th Amendment to the U. S. Constitution. In this connection see the following authorities: Baughman Manufacturing Co. v. Hein, 44 Ill.App.2d 373, 194 N.E.2d 664 (1963); Grobark v. Addo Machine Co., 16 Ill.2d 426, 158 N.E. 2d 73 (1959); Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583 (2nd Circ. 1965). In *Baughman*, supra, it was held that even though the distributorship agreement sued upon was signed in Illinois by the parties, the defendant distributor did not have sufficient minimum contacts in Illinois necessary for the acquisition of in personam jurisdiction over him there, since his distributorship territory was limited to another state, and since he maintained no office and transacted no business in Illinois. Also the case of *Agrashell*, supra, we think, disposes not only of appellant's reliance upon the acceptance of the contract by appellant in Texas as sustaining jurisdiction over appellee, but also of its reliance on the contractual provision that the contract was to be construed by the laws of. Texas. We quote in part from *Agrashell*, supra, as follows:

"Sirotta [third-party plaintiff] contends that certain acts by Hammons [third-party defendant over whom service was obtained by the New York long-arm statute] preceding the performance of the sales contracts constituted a transaction of business in New York * * *. It points out that Hammons solicited orders from Sirotta by mail and telephone to New York; that the contracts with Hammons were executed by Sirotta in New York; and that Hammons agreed that the principal contract between them should be interpreted in accordance with New York law. Sirotta also argues that the sales contracts were concluded in New York because the last acts necessary to their making occurred there.

"In Hanson v. Denckla * * * [the Court then quotes the purposeful act rule from *Hanson* which has previously been referred to herein]

"We fail to see in what material respect Hammons invoked the benefits and protections of New York law merely by negotiating and concluding goods contracts through the mails and by telephone with persons residing in New York. Other courts, construing similar state laws in like cases, have also found that these contracts are insufficient to give personal jurisdiction over the foreign corporation. Grobark v. Addo Machine Co., 16 Ill.2d 426, 158 N.E.2d 73 (1959) Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502 (4th Cir. 1956). By contrast, in two leading cases relied on by Sirotta, representatives of the foreign corporations went to the forum states in person to negotiate the contracts. * * * There the corporate representatives were protected by the laws of the forum states in a direct physical sense.

"Nor do we regard as decisive the fact that Hammons agreed that one of the contracts should be interpreted in accordance with New York law, or the allegation that all of the contracts were concluded in New York. The choice of law provision cannot be construed as a voluntary submission by Hammons to the personal jurisdiction of the New York courts in the absence of any express contractual understanding to that effect. * * *" (Interpolations ours.)

Appellant also relies upon the fact that "Appellee further purchased all of the materials under the contract in Harris County, Texas." This is true because title passed to appellee when the materials and equipment were delivered by appellant to a common carrier, F.O.B. Houston, Harris County, Texas. These goods were not picked up by appellee in Houston; they were shipped by common carrier from Houston to California. Appellee was nev-

er present in Houston. We think that the mere fact that the goods were shipped by appellant to appellee F.O.B. Houston pursuant to the contractual provision that "all sales to be F.O.B. point of shipment", does not make appellee amenable to in personam jurisdiction in Texas under the facts in this case. In M. Katz & Son Billiard Products, Inc. v. G. Correale & Sons, Inc., 26 A.D.2d 52, 270 N.Y.S.2d 672 (1955) it was stated in part as follows:

"This action is to recover the agreed price of a quantity of billiard cues and triangles sold by plaintiff to a New Jersey corporation. * * *

"In accordance with the practice of the parties extending over many years, one of defendant's employees in New Jersey had ordered the goods by telephone, and plaintiff had shipped them to New Jersey by common carrier F.O.B. its factory in New York City. Payment in the past presumably was made by remittance from New Jersey. These contacts with this state do not appear to constitute 'purposeful acts' here [in New York] sufficient to sustain jurisdiction * * *." (Interpolation ours).

Also in L. D. Reeder Contractors of Arizona v. Higgins Industries, Inc., 265 F.2d 768 (9th Circ. 1959) the court in discussing whether the defendant had done any "purposeful act" in California, stated:

"Whether the flooring was delivered, F.O.B., New Orleans, freight allowed to point of destination, or F.O.B. some point in California, seems to be in dispute. We do not consider either method of operation particularly important, and certainly it is not controlling."

"Other acts relied on by appellant have been considered and none of them are deemed to be sufficient "purposeful acts" on the part of appellee.

The findings of fact of the trial court are amply supported by evidence of probative force.

It is our view, under this record, that appellee by no "purposeful act" availed himself of the privilege of conducting activities within the forum State of Texas from which the alleged cause of action arose or was connected therewith, and thus did not invoke the benefits and protections of the laws of Texas. It is our further view, under this record, after considering the traditional notions of fair play and substantial justice, and after further considering the quality, nature and extent of activity in the forum state, the relative convenience of the parties and the basic equities of the situation, that appellee did not have the requisite "minimum contacts" with the forum state to be required to submit to the jurisdiction of the forum state in the suit at bar, under the decisions of the Supreme Court of the United States and the other authorities hereinbefore referred to.

We hold the trial court rendered a correct judgment which should be affirmed.

The judgment of the trial court is affirmed.