LONGINES-WITTNAUER WATCH CO., INC., Respondent, *v.* BARNES & REINECKE, INCORPORATED, Appellant.

First Department, July 2, 1964.

*Chester Bordeau* of counsel (*White & Case,* attorneys), for appellant.

*Henry P. Poole* of counsel (*Goodwin, Savage, Clare & Whitehead,* attorneys), for respondent.

BREITEL, J. P.   The issue is whether the courts of this State may exercise personal jurisdiction over defendant, a Delaware

corporation having its principal place of business in Illinois. It does not do business here but entered into a contract with plaintiff, a New York corporation, for the manufacture and sale to plaintiff of two specially designed machines. Plaintiff sues for breach of warranty in the performance of the contract. The transactions occurred prior to the effective date of the new personal jurisdiction statute (CPLR 302) but the action was begun thereafter and rests on the personal service of process in Illinois on defendant corporation (CPLR 313).

Defendant moved to dismiss the complaint under CPLR 3211 (subd. [a], par. 8). It argued that 302 was not intended to be retroactive in effect and that, in any event, defendant never transacted any business within the State from which the pleaded cause of action arose within the meaning of paragraph 1 of subdivision (a) of 302. Under CPLR 3211 (subd. [c]) affidavits were submitted and considered on the motion. Special Term denied the motion and defendant appeals.

The motion was properly denied and the order should be affirmed. CPLR 302 is applicable to events occurring prior to its effective date, September 1, 1963 (CPLR 10005), although it is applicable only to actions brought subsequent to such date, and the pleaded cause of action arose from defendant's transaction of business within the State sufficient to sustain personal jurisdiction in this action.

Plaintiff sues for $476,400 damages for breach of warranty in the manufacture, sale, and delivery of certain specially designed machines for which the ultimate price was $118,000. Plaintiff invited quotations by mail and in April and May, 1962 defendant submitted proposals to plaintiff. Discussions took place in Chicago. Then an officer-director and an engineer of defendant came to New York to negotiate the sale and determine the design requirements. After further Chicago meetings the contract of sale was reduced to writing and executed by defendant in Illinois in June, 1962. The design and construction of the machines went forward in Illinois. In the months of September and December, 1962 responsible officials and employees of defendant came to New York to make arrangements in connection with performance of the contract. These consisted of the president, another officer, and an engineer. In March, 1963, following meetings in Illinois and New York, a supplemental agreement was executed by plaintiff in New York after it had been signed by defendant in Illinois. In April, 1963 the machines were delivered to plaintiff's plant in New York, f. o. b. Chicago, Illinois, and defendant handled or participated in the subsequent installation and testing of the machines in

New York. In June and July, 1963 the machines were accepted by plaintiff. The defects were discovered thereafter, and this action was begun October 7, 1963 by service of the summons and complaint on defendant in Illinois.

For what relevance it may have, the initial written agreement between the parties, originating as a detailed purchase order prepared by plaintiff, stipulated that the contract was made in New York and that it was governed by the laws of New York. It is not disputed by plaintiff, however, that defendant executed the contract (plaintiff's detailed purchase order) in Illinois or that plaintiff's representatives went to and negotiated in Chicago, Illinois, many phases of the transaction.

CPLR 302 reads, in pertinent part, as follows:

" (a) Acts which are the basis of jurisdiction. A court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:

" 1. transacts any business within the state * * *."

Prior to the submissions on this appeal this court and the Court of Appeals had determined that 302 CPLR would be given retroactive effect to events or causes of action arising prior to its effective date (*Simonson* v. *International Bank*, 14 N Y 2d 281; *Singer* v. *Walker*, 21 A D 2d 285). In the *Simonson* case, the holding was to the effect that the new statute was not applicable to actions begun before the effective date of the statute. At the same time, however, it was asserted with considered deliberateness that the statute would be applicable to causes of action arising before such date. This court, in the *Singer* case so held. Consequently, on defendant's argument with respect to retroactivity further discussion is not necessary.

As to the second question, this record supplies ample evidence that the pleaded cause of action arose from the transaction of business in New York. In so concluding, it is not necessary to rely on the recital in the initial agreement that the contract was made in New York or that the applicable law is that of New York, although to be sure these would be positive factors to confirm that there had been or was to be a significant transaction of business in New York. If it were necessary to reach the question on this basis it is notable that the recitals in an agreement are not subject to the parol evidence rule (Restatement, Contracts, § 244). Of course, only the reference to the contract having been made in New York is a recital of fact, while the

stipulation as to applicable law is of promissory effect. However, the selection by parties of the law applicable to govern their agreement is some indication that the agreement was the outgrowth of contacts with the State whose law was thus selected (Restatement, Conflict of Laws, 2d [Tentative Draft No. 6, April 22, 1960], § 332a, including Comments, but especially Comment f; Ehrenzweig, Conflict of Laws, § 176).

Extensive negotiations occurred in New York as well as in Illinois. The initial agreement was executed in Illinois and the supplemental agreement was executed in New York. Most importantly, the installation and testing of the machines in New York were participated in, if not supervised, by defendant. These elements required defendant through responsible officials and employees to be present in New York and to perform in New York various phases of the stipulations of the agreements between the parties. There was, therefore, significant physical performance by defendant, in New York. That the machines were delivered f. o. b. Chicago, Illinois, does not detract from these cogent indicators of transacting business in New York. These facts carry this case well beyond the borderline situations involved in the authorities collected by both sides in their respective briefs.

The ramifying involvement in doing a localized business required to satisfy the test for subjecting a nondomiciliary to general personal jurisdiction is not applicable (cf. CPLR 301; *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259, and the many cases in its wake). A much less restrictive concept and formulation is the purpose of the new statute (1 Weinstein-Korn-Miller, N. Y. Civ. Prac., ¶¶302.06, 302.08).

Quite relevant to these conclusions are the holdings in *National Gas Appliance Corp.* v. *AB Electrolux* (270 F. 2d 472, 475 [7th Cir.], cert. den. 361 U. S. 959), and *Berlemann* v. *Superior Distr. Co.* (17 Ill. App. 2d 522). These cases were concerned with the Illinois statute which is much like that of New York. They stand for the proposition that the solicitation and negotiation of orders in the plaintiff's State, if coupled with supplementary activity in performance of the contract in the State, justify a finding of transacting business sufficient to sustain personal jurisdiction in actions arising out of the specific business. Notably, these cases do not find the transaction of business merely on negotiations in the plaintiff's State (cf. *Irgang* v. *Pelton & Crane Co.*, 42 Misc 2d 70, 73). Whether solicitations of orders with related negotiations alone suffice to support personal jurisdiction under 302 need not now be determined, for this case involves much more. It may well be that the extensive-

ness of the negotiations and the status of the corporate representatives in the negotiations will provide determinative influence in deciding that question when it arises.

The circumstances in this case also amply satisfy any constitutional requirements of due process because defendant's contacts with New York were so many and so directly physical. (See, generally, Restatement, Conflict of Laws, 2d [Tentative Draft No. 3, April 19, 1956], §§ 84, 91a, including Comments and Reporter's Notes; and cf. Uniform Interstate and International Procedure Act, § 1.03, incl. Commissioners' Notes, 9B ULA [Pocket Part, 1964] 73–78.) Moreover, if it were necessary, and it is not, the stipulated applicable law clause approaches being a consent to personal jurisdiction in the courts of this State (cf. *National Rental* v. *Szukhent*, 375 U. S. 311, 315). It certainly is a concession to substantial contact with this State, so that if the jurisdiction statute is broad enough, there is no occasion for constitutional doubt (cf. *McGee* v. *International Life Ins. Co.*, 355 U. S. 220).

Accordingly, the order denying defendant's motion to dismiss the complaint should be affirmed, with costs to plaintiff-respondent.

VALENTE, MCNALLY, STEVENS and EAGER, JJ., concur.

Order, entered on March 17, 1964, denying defendant's motion to dismiss the complaint, unanimously affirmed, with $20 costs and disbursements to respondent.