AGRASHELL, INC., Plaintiff,

v.

BERNARD SIROTTA COMPANY, Edwin M. Sirotta, and Milton A. Sirotta, Defendants and Third-Party Plaintiffs-Appellants,

v.

HAMMONS PRODUCTS COMPANY, Third-Party Defendant-Respondent.

No. 259, Docket 29177.

United States Court of Appeals Second Circuit.

Argued Jan. 5, 1965.

Decided April 6, 1965.

Rehearing Denied April 21, 1965.

Hays, Circuit Judge, dissented.

Edward Halle, Garden City, N. Y. (David F. Cohen, New York City, of counsel), for defendants and third-party plaintiffs-appellants.

Lawrence C. Moore, Washington, D. C. (Damon M. Gunn, Washington, D. C., of counsel), for third-party defendant-respondent.

Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

WATERMAN, Circuit Judge:

Defendants (hereinafter Sirotta), residents of New York constituting a New York partnership, bought cracked black walnut shells from the third-party defendant (hereinafter Hammons), a Missouri corporation operating under the slogan, "Our Black Walnut Goodies Are Just What They're Cracked-Up To Be." When Sirotta resold the goods, plaintiff (hereinafter Agrashell), a Delaware corporation, brought suit in the United States District Court for the Eastern District of New York, alleging that Sirotta had infringed Agrashell's patent rights. Sirotta, by leave of the court under Fed.R.Civ.P. 14(a), impleaded Hammons as a third-party defendant, alleging that Hammons had warranted the fitness of the goods for resale and had agreed to indemnify Sirotta against a patent infringement suit. The summons and complaint in the third-party action were served on Hammons in Missouri.

Hammons moved to dismiss the third-party complaint on the ground that it was not personally subject to the jurisdiction of the court. In support of the motion, Hammons submitted virtually identical affidavits by three of its officers, stating that Hammons had never maintained an agency, salesman, stock of goods, representative, or telephone listing in New York; that all goods offered or sold to Sirotta were contracted for and delivered in Missouri; and that Hammons had neither been licensed to do business in New York nor had otherwise voluntarily subjected itself to the jurisdiction of the New York courts.

In opposition to the motion, Sirotta submitted affidavits and exhibits describing in detail its dealings with Hammons relative to the purchase of the goods. The contents of these documents will be set forth subsequently. The district court declined to order a trial-type hearing on the motion but proceeded to dismiss the third-party complaint on the

papers alone. Judge Bartels's careful and comprehensive opinion is reported at 229 F.Supp. 98. The district court also directed entry of a final judgment pursuant to Fed.R.Civ.P. 54(b), enabling us to review its decision prior to adjudication of the claim by Agrashell against Sirotta.

■ The district court, citing Arrowsmith v. United Press Int'l, 320 F.2d 219 (2 Cir. 1963), ruled that because the third-party suit was a diversity action, the amenability of Hammons to the suit was to be determined by relevant New York law, in this case Section 302(a)1 of the Civil Practice Law and Rules (hereinafter the CPLR). We agree that Section 302(a)1 is dispositive of this motion, but we arrive at this result by a somewhat different route from that taken by the district court.

A leading authority on the Federal Rules of Civil Procedure asserts:

> "The general purpose of Rule 14 is to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him, and a judgment in his favor against the third-party defendant." 3 Moore, Federal Practice ¶ 14.04, at 501 (1964), quoted in Dery v. Wyer, 265 F.2d 804, 806–07 (2 Cir. 1959).

■ Accordingly, even without diversity of citizenship between the parties, Sirotta would have been permitted to implead Hammons in the federal courts, so long as there was subject-matter jurisdiction of Agrashell's suit against Sirotta. 3 Moore, Federal Practice ¶ 14.26; Dery v. Wyer, supra, at 807. Likewise, it is probable that even though the third-party claim did not satisfy the venue requirements for diversity actions, Sirotta would have been allowed to implead Hammons in the Eastern District court, so long as Agrashell's claim against Sirotta was properly laid there.

3 Moore, Federal Practice ¶ 14.28[2]; United States v. Acord, 209 F.2d 709, 713–14 (10 Cir.), cert. denied, 347 U.S. 975, 74 S.Ct. 786, 98 L.Ed. 1115 (1954); Morrell v. United Air Lines Transp. Corp., 29 F.Supp. 757 (S.D.N.Y.1939).

In view of these doctrines, it may well be that the issue of personal jurisdiction, in the sense of territorial domain, should also be resolved by a rule fashioned especially for third-party claims. Indeed, a special rule might be peculiarly appropriate in the present case, for Sirotta's third-party claim is joined to a federal question action. However, we find it unnecessary to decide this difficult question, which was neither briefed nor argued by the parties. Even if a special rule should govern the territorial dominion of the district court over Hammons, we do not suppose that it would be more restrictive than Section 302(a)1 of the CPLR; and in this particular case Section 302(a)1 clearly determines the related issue of whether the process of the district court was properly served on Hammons in Missouri.

■ Even in the case of a third-party claim, process can be served only within the limits prescribed by Fed.R.Civ.P. 4. See 3 Moore, Federal Practice ¶ 14.28 [1]; Moreno v. United States, 120 F.2d 128, 130 (1 Cir. 1941); Banachowski v. Atlantic Ref. Co., 84 F.Supp. 444 (S.D. N.Y.1949). The basic restriction on the range of process of a federal court is found in Rule 4(f):

> "All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state."

The principal federal statute or rule potentially authorizing service of the process of the Eastern District court on Hammons in Missouri is Rule 4(e):

> "Whenever a statute or rule of court of the state in which the district court is held provides * * * for

service of a summons * * * upon a party not an inhabitant of or found within the state, * * * service may * * * be made under the circumstances and in the manner .prescribed in the statute or rule."

Only Section 313 of the CPLR might provide for service of a New York summons on Hammons in Missouri:

"A person domiciled in the state or subject to the jurisdiction of the courts of the state under section 301 or 302 * * * may be served with the summons without the state, in the same manner as service is made within the state * * *."

No one contends that Hammons is a domiciliary of New York or subject to the jurisdiction of the New York courts under Section 301. As for Section 302, according to our record, Sirotta relied only on subsection (a)1 in the proceedings below.[1] Thus, at the end of a roundabout search, we find the same statutory provision to be dispositive of this case as did the district court.

Hammons, however, denies the applicability of Section 302(a)1. It points out that the CPLR went into effect on September 1, 1963, and that although Sirotta's third-party suit was commenced on December 17, 1963, the events on which the suit is based occurred prior to September 1, 1963. Hammons consequently argues that Sections 313 and 302 were not intended to have retroactive effect, and that to apply them retroactively would violate due process.

■ Hammons has neither alleged nor proved that its dealings with Sirotta were carried out in reliance on prior New York law concerning personal jurisdiction and service of process. Therefore, Sections 313 and 302 were clearly intended to cover this case, for in Simonson v. International Bank, 14 N.Y.2d 281, 290,

251 N.Y.S.2d 433, 440, 200 N.E.2d 427, 432 (1964), the Court of Appeals ruled:

"[W]ith the possible exception of cases in which the acts serving as the predicate for jurisdiction under the new section are shown to have been carried out in justifiable reliance on the prior law * * *, CPLR § 302 has retroactive effect to the extent of embracing suits instituted after its effective date but based on previously accrued causes of action."

Furthermore, in the absence of such a showing, the limited retroactivity prescribed by the Court of Appeals for these procedural provisions does not violate due process. See McGee v. International Life Ins. Co., 355 U.S. 220, 224, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Note, Retroactive Expansion of State Court Jurisdiction Over Persons, 63 Colum.L.Rev. 1105, 1124 (1963).

Section 302(a)1 of the CPLR states: "(a) * * * A court may exercise personal jurisdiction over any non-domiciliary * * * as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:

"1. transacts any business within the state."

In Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 320 (2 Cir. 1964), we described the general scope of this provision as follows:

"§ 302 was enacted to take advantage of New York's newly acquired constitutional power, derived from International Shoe Co. v. State of Washington [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95], supra, and its progeny, to subject non-residents to personal jurisdiction based on acts occurring within the state. Simonson v. International Bank, supra, 14

---

1. On appeal, Sirotta argues for the first time and in a sketchy manner that Section 302(a)2 is also applicable. We decline to consider this contention, inas-

much as the case is being returned to the district court for further proceedings, at which time Sirotta may pursue the point if it wishes.

N.Y.2d at 288, 251 N.Y.S.2d at 438–439, 200 N.E.2d at 430, 431. The provision is apparently based on that portion of International Shoe Co. v. State of Washington, supra, 326 U.S. at 318–319, 66 S.Ct. at 159, 90 L.Ed. 95, which holds that 'the commission of some single or occasional acts * * * in a state' may be enough to render a person amenable to local suit on causes of action which 'arise out of or are connected with the activities within the state.' See generally N.Y.Legis.Doc. (1958) No. 13, pp. 39–40."

Accordingly, in the absence of authoritative pronouncements by the New York courts indicating a narrower legislative intention, we shall assume that Section 302 is as broad as the Federal Constitution would permit it to be. Ibid.

Sirotta argues that its third-party claim against Hammons can most conveniently be tried in the same forum as Agrashell's original claim against Sirotta. This is quite true, as Professor Moore points out in the passage quoted above, and it is also true that convenience of the forum has, on occasion, been considered a factor supporting personal jurisdiction over foreign corporations. Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n, 339 U.S. 643, 649, 70 S.Ct. 927, 94 L.Ed. 1154 (1950). However, in its most recent word on the subject, Hanson v. Denckla, 357 U.S. 235, 254, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), the Supreme Court has indicated that a state court does not acquire personal jurisdiction merely "by being the 'center of gravity' of the controversy, or the most convenient location for litigation." More is required to sustain the service of process on Hammons in Missouri.

Sirotta contends that certain acts by Hammons preceding the performance of the sales contracts constituted a transaction of business in New York within the meaning of Section 302(a)1. It points out that Hammons solicited orders from Sirotta by mail and telephone to New York; that the contracts with Hammons were executed by Sirotta in New York; and that Hammons agreed that the principal contract between them should be interpreted in accordance with New York law. Sirotta also argues that the sales contracts were concluded in New York because the last acts necessary to their making occurred there.

In Hanson v. Denckla, supra, at 251, 253, 78 S.Ct. at 1238, 1240, the Supreme Court declared:

"However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. See International Shoe Co. v. State of Washington, 326 U.S. 310, 319 [66 S.Ct. 154, 90 L.Ed. 95].

*    *    *    *    *    *

"The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. International Shoe Co. v. State of Washington, 326 U.S. 310, 319 [66 S.Ct. 154, 90 L.Ed. 95]."

We fail to see in what material respect Hammons invoked the benefits and protections of New York law merely by negotiating and concluding goods contracts through the mails and by telephone with persons residing in New York. Other courts, construing similar state laws in like cases, have also found that these contacts are insufficient to give personal jurisdiction over the foreign corporation. Grobark v. Addo Mach. Co., 16 Ill.2d 426, 158 N.E.2d 73 (1959); Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502 (4 Cir. 1956). By contrast, in two leading cases relied on by Sirotta, representatives of the foreign corporations went to the forum states in person to negotiate the con-

tracts. Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 21 A.D.2d 474, 251 N.Y.S.2d 740 (1964); National Gas Appliance Corp. v. AB Electrolux, 270 F.2d 472 (7 Cir. 1959), cert. denied, 361 U.S. 959, 80 S.Ct. 584, 4 L.Ed.2d 542 (1960). There the corporate representatives were protected by the laws of the forum states in a direct physical sense.

■■ Nor do we regard as decisive the fact that Hammons agreed that one of the contracts should be interpreted in accordance with New York law, or the allegation that all of the contracts were concluded in New York. The choice of law provision cannot be construed as a voluntary submission by Hammons to the personal jurisdiction of the New York courts in the absence of any express contractual understanding to that effect. Cf. Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., supra, 239 F.2d 502 at 507. But see Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra, 21 A.D.2d 474 at 478, 251 N.Y.S.2d at 744. Moreover, even though the contracting parties had sufficient contacts with New York to justify the application of New York law, they still might not enjoy the contacts necessary for personal jurisdiction in the New York courts. See Hanson v. Denckla, supra, at 253–54, 78 S.Ct. at 1239–1240. But see Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra, 21 A.D.2d 474 at 478, 251 N.Y.S.2d at 744.

Sirotta relies heavily on McGee v. International Life Ins. Co., supra. There are certain resemblances between that case and ours. In McGee, California was allowed to exercise personal jurisdiction over a Texas corporation based on a single contract insuring the life of a California resident. Here, Sirotta asks us, in effect, to allow New York to exercise personal jurisdiction over a Missouri corporation based in part on a contract indemnifying New York residents against loss. However, the differences between the cases are even more significant than their resemblances. In McGee, the Supreme Court was concerned with "an activity that the State treats as exceptional and subjects to special regulation." Hanson v. Denckla, supra, at 252, 78 S.Ct. at 1239. Moreover, the Supreme Court emphasized the fact that because many life insurance claims are small or moderate, "individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof." McGee v. International Life Ins. Co., supra, at 223, 78 S.Ct. at 201. Neither of these remarks would seem to apply to contracts of indemnity against patent infringement suits. Accordingly, while we do not by any means regard these contacts as irrelevant to the question of personal jurisdiction, we hold that something more is needed to sustain the service of process on Hammons in Missouri.

■ Pursuant to the sales contracts, Hammons shipped ten truckloads of cracked black walnut shells to Sirotta in New York, over a period of about eighteen months. Sirotta alleges that these shipments were f. o. b. New York and were carried in trucks owned or leased by Hammons. If these contentions are correct, Hammons was presumably transacting business in New York within the meaning of Section 302(a)1. The risk of loss would seem to have been on Hammons while the goods were passing through New York on the way to Sirotta's place of business, and at the same time Hammons would also seem to have had a proprietary stake in the safe operation of the trucks. Accordingly, Hammons would have enjoyed the benefits and protections of New York law in an overt physical manner.

However, Hammons alleges that the goods were sold f. o. b. Missouri and were shipped in common carriers subject to Sirotta's directions. On the basis of these facts it contends that it had no responsibility for either the goods or the trucks once they left its place of business in Missouri. If these assertions are valid, Hammons cannot be reached by Section 302(a)1, for, in that event, Sirot-

ta and the carriers, not Hammons, would have been the ones to profit by New York law. See Grobark v. Addo Mach. Co., supra (goods shipped by independent carriers); Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., supra (goods sold f. o. b. place of shipment).

■ Sirotta warns us against turning this appeal on "nice or technical questions of title or property under commercial law." On the contrary, we feel that in cases arising out of contractual relationships, the rules governing amenability to suit should be reasonably clear-cut, so that the parties may predict with some certainty the jurisdictional consequences of their conduct. See MacInnes v. Fontainebleau Hotel Corp., 257 F.2d 832, 833 (2 Cir. 1958). If these rules can be based on a body of law already well-established and well-understood, so much the bettter. The law relating to the passage of risk in the sale and carriage of goods meets this need, and at the same time it is directly relevant to the policies governing personal jurisdiction over foreign corporations.

Unfortunately, the exhibits submitted by Sirotta contain conflicting evidence of uncertain significance on the question of who bore the risk of loss to the goods. For example, three of Sirotta's orders read, "FOB our door, Brooklyn NY," "FOB our door," and "fob our door, Brooklyn, N.Y." On the other hand, the advertising matter sent out by Hammons quoted prices "f.o.b. Stockton, Missouri" and "f.o.b. Bolivar, Missouri," and the major contract between the parties, which governed seven of the ten shipments to New York, provided, "F.O.B. points at Purchaser's option: Stockton, Mo. * * * Bolivar, Mo. or El Dorado Springs, Mo. * * *"

The evidence on the question of who was responsible for the trucks is equally inconclusive. For instance, Edwin Sirotta deposed that in a telephone conversation at the outset of their dealings, "Mr. Hammons stated that his company had their own and rented trucks which could bring the products into New York and

thus, reduce freight costs;" Sirotta later wrote Hammons in connection with the initial order, "[Y]ou are to assume all responsibility for trucking arrangements;" and on every shipment Hammons prepaid whatever trucking charges may have been incurred. On the other hand, Sirotta wrote Hammons in connection with the first order, "[W]e cannot use any trucking outfit that might violate any ICC regulations;" the major contract provided, "Seller to make and route shipments in accordance with instructions from Purchaser;" and on every occasion Sirotta ultimately paid the trucking costs.

■ Because all the evidence before the district court was documentary, we do not feel limited by the findings below on these factual questions. See 5 Moore, Federal Practice ¶ 52.04 (1964); Miller v. Commissioner of Internal Revenue, 327 F.2d 846, 849 (2 Cir.), cert. denied, 379 U.S. 816, 85 S.Ct. 32, 13 L.Ed.2d 28 (1964). We agree with the district court that the evidence contained in Sirotta's exhibits, standing alone, did not necessarily justify denial of Hammons's motion to dismiss. However, we feel that Sirotta did present evidence of sufficient weight to warrant further inquiry, particularly into those facts peculiarly within Hammons's knowledge which were not disclosed by its very sketchy affidavits. Although we appreciate the desire of overburdened district courts to handle their dockets in an expeditious manner, we believe that issues of personal jurisdiction are fully as deserving of thorough factual exposition as issues related to the merits of a claim, for jurisdictional decisions may also determine substantial rights. Accordingly, we remand the case to the district court for a full hearing, including opportunities for oral testimony and cross-examination, on the problem of who was responsible for the goods and the trucks while they were traveling through New York. See Gelfand v. Tanner Motor Tours, Ltd., supra, 339 F.2d 317 at 323.

The district court apparently assumes that this problem is to be resolved in the

light of New York law. It is not clear whether the assumption is based on the theory that this is a diversity case governed by Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its offspring, on the provision invoking New York law in the principal contract between Hammons and Sirotta, or on some other basis. Because this complex choice of law question has been neither briefed nor argued by the parties, we prefer not to express an opinion on it at this time. Moreover, we doubt that it can influence the result of this case, for New York, Missouri, and, on the chance that federal general law is applicable, the District of Columbia, have all adopted the Uniform Commercial Code.

Reversed and remanded for further proceedings in accord with this opinion.

LUMBARD, Chief Judge (concurring):

Although I would affirm the order of Judge Bartels which dismissed the third-party claim for lack of personal jurisdiction, I join in Judge Waterman's conclusion that the case be remanded for the taking of further evidence as that appears to me to be the only way to resolve the matter before us in view of our divergent views. I am in agreement with the principles of law set forth in Judge Waterman's opinion but I feel that their application to these facts should result in a finding that jurisdiction over Hammons does not exist. Therefore, I think I should add that it seems unlikely from what is already before us that any additional evidence adduced would require the district court to hold that it had jurisdiction.

HAYS, Circuit Judge (dissenting):

I believe that the court reads International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), too narrowly. Here the third party defendant solicited in New York City by mail, negotiated with the buyer in New York by mail, delivered samples into New York, sent a purchase order to be signed by Sirotta in New York, and had truckers paid by it make deliveries of 115 tons of walnut shells into New York. The New York contacts were obviously more than "minimal."

I can see no necessity for taking further evidence on the issue of jurisdiction.