**BENNETT INDUSTRIES, INC.,**
**Plaintiff,**

v.

**Theodore J. LAHER, et al., Defendants.**

**Civ. A. No. 3–82–1057–H.**

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 28, 1983.

Lawrence J. Friedman, Tobolowsky & Friedman, Dallas, Tex., for plaintiff.

Charles R. Haworth, Johnson & Swanson, Dallas, Tex., for defendants.

**ORDER**

SANDERS, District Judge.

This case is before the Court on Defendants' Motion to Dismiss or Transfer and

Brief in Support, filed July 26, 1982; Plaintiff's Response and Brief, filed August 16, 1982; Defendants' Reply Brief and Affidavits, filed September 16, 1982; Plaintiff's Affidavits and Response to Defendants' Reply, filed October 29, 1982; Defendants' Reply to Plaintiff's Response, filed November 16, 1982; and Plaintiff's Second Response to Defendants' Second Reply, filed December 6, 1982.

The Court is of the opinion that it lacks personal jurisdiction over Defendants. Defendants' Motion to Dismiss, therefore, is hereby GRANTED.

## I. Facts

In early June 1981, Defendant Theodore J. Laher ("Laher"), president of Laher Spring and Electric Car Corporation ("Laher Spring"), retained Constantino Riccardi ("Riccardi") to find a purchaser for Laher Spring. Laher has been a California resident at all relevant times, and Laher Spring is an Oregon corporation with its principal place of business in California. All of Laher Spring's subsidiaries are California corporations.

Riccardi sent out numerous informational flyers to prospective purchasers, one of which was received in Dallas, Texas, by Paul J. Bennett ("Bennett"), Chairman of the Board of Plaintiff Bennett Industries, Inc. ("Bennett Industries"). Bennett contacted Riccardi concerning Laher Spring. Riccardi called Bennett in Texas on several occasions, but he never met with Bennett in Texas. Bennett and Laher had numerous face to face meetings to discuss the sale of Laher Spring, all of which were held in California.

In July 1981, Laher and Bennett again met in California to execute an "Agreement for the Sale of Stock" ("Agreement"), whereby Bennett Industries agreed to purchase the stock of Laher Spring. The Agreement specifies that Plaintiff Bennett Industries will pay for the Laher Spring stock with a check drawn at a national bank in Dallas, Texas. The Agreement further states that Texas law shall govern its interpretation, and that certain notices shall be sent to Plaintiff's Dallas address. Most of the documents involved in the sale were hand delivered to Laher in California. Some supplemental documents, however, were delivered to Plaintiff's Dallas address.

Plaintiff alleges that Laher made a series of material misrepresentations concerning Laher Spring, and it seeks damages for fraud, torts, breach of contract, violations of securities law, misrepresentation, and conspiracy. Plaintiff further requests rescission and declaration of a constructive trust. Plaintiff sues Laher individually and as trustee for the former stockholders of Laher Spring.

## II. Personal Jurisdiction

### A. Article 2031b

Traditionally, the determination of personal jurisdiction in Texas has been a two step process. First, courts have determined whether the assertion of jurisdiction would meet the requirements of Texas' long arm statute, Article 2031b, Texas Revised Civil Statutes. Then, courts have determined whether the assertion of jurisdiction would comport with the requirements of Due Process. *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483 (5th Cir.1974). In *Hall v. Helicopteros Nacionales de Colombia, S.A.* ("*Helicol*"), 638 S.W.2d 870 (Tex.1982), however, the Texas Supreme Court apparently negated the need for the first step in the process and permitted courts to move directly to the question of due process. *See Placid Investments, Ltd. v. Girard Trust Bank,* 689 F.2d 1218 (5th Cir.1982).

■ In this case, however, the exact scope of *Helicol* need not be determined, because the assertion of personal jurisdiction would clearly satisfy Article 2031b. Article 2031b authorizes the assertion of jurisdiction over a non-resident defendant whenever he "engages in business" in the state of Texas. Article 2031b, Section 4, defines "engaging in business" as "entering into a contract by mail or otherwise with a resident of Texas to be performed in whole or part by either party in this state." Tex. Rev.Civ.Stat.Ann. art. 2031b, Section 4 (Vernon 1964).

In the case at bar, it is conceded that Defendants entered into a contract with a Texas resident. Moreover, part of Plaintiff's contractual obligation, the procurement of a check from a Dallas bank, necessarily had to be performed in Texas. The procurement of that check satisfied the statutory requirement of part performance by either party in Texas. *See Arthur, Ross & Peters v. Housing, Inc.,* 508 F.2d 562, 565 (5th Cir.1975); *American Steel, Inc. v. Cascade Steel Rolling Mills,* 425 F.Supp. 301, 302 (S.D.Tex.1975), *aff'd,* 548 F.2d 620 (5th Cir.1977). Assertion of jurisdiction, therefore, would comport with the requirements of Article 2031b.

### B. Due Process

■ Regardless of a state's long arm statute, a court cannot assert jurisdiction over a nonresident defendant unless the assertion of jurisdiction would be consonant with due process. The Fifth Circuit applies a dual test for determining the due process boundaries of personal jurisdiction. "First, 'there must be some minimum contact with the state which results from an affirmative act of the defendant.' Secondly, 'it must be fair and reasonable to require the defendant to come into the state and defend the action.'" *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 495 (5th Cir.1974).

■ Concerning the first prong of that test, Defendants' "contacts" with Texas are as follows: (1) Defendants' agent sent to Texas at least one flyer soliciting purchasers for Laher Spring; (2) Defendants' agent called Bennett in Texas on several occasions to discuss the sale of Laher Spring; (3) Defendants received a check drawn on a Texas bank; (4) Defendants agreed to send certain notices to Plaintiff's Texas address; and (5) the Agreement signed by Defendants specifies that its terms are to be governed by Texas law.

In several cases, the Fifth Circuit has addressed the first four "contacts" listed above, and found them insufficient to meet the requirements of due process. In *Arthur, Ross & Peters v. Housing, Inc.,* 508 F.2d 562 (5th Cir.1965), a Texas resident

sued a North Carolina company concerning a contract for the sale and development of land in North Carolina. As in the case at bar, the defendants in *Arthur, Ross* solicited the plaintiff in Texas, negotiated the contract long distance (in *Arthur, Ross,* the negotiations were by mail rather than phone, but that difference is inconsequential), agreed to send notices to Texas, and received payment from Texas. *Id.* at 564–65. The Fifth Circuit found those contacts insufficient to warrant the exercise of jurisdiction. *Id.* at 565.

Similarly, in *American Steel Mills, Inc. v. Cascade Steel Rolling Mills,* 425 F.Supp. 301 (S.D.Tex.1975), *aff'd,* 548 F.2d 620 (5th Cir. 1977), the Fifth Circuit again found the first four above-listed "contacts" insufficient. In *Cascade,* the nonresident defendant solicited a Texas buyer, negotiated a contract through telecommunications, agreed to send notices to Texas, and received payment from a Texas bank. Moreover, in *Cascade,* as in the case at bar, the contract at issue specifically required that the plaintiff obtain payment from a Texas bank. The district court specifically found that the plaintiff's duty to obtain payment in Texas "add[ed] nothing to the quality of Defendant's contacts with the forum", *Id.* at 303. The *Cascade* decision, then, as well as the *Arthur, Ross* decision, strongly support the conclusion that solicitation, long distance negotiation, the sending of notices, and payment from a Texas bank are not sufficient "contacts" to constitutionally permit the assertion of personal jurisdiction over Defendants. *See, also, Charia v. Cigarette Racing Team, Inc.,* 583 F.2d 184, 188 (5th Cir.1978); *Benjamin v. Western Boat Building Corp.,* 472 F.2d 723, 729 (5th Cir.), *cert. denied,* 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973).

Plaintiff relies heavily on *Product Promotions, Inc. v. Cousteau,* 595 F.2d 483, 495 (5th Cir.1974). *Cousteau,* however, is distinguishable in several critical respects. In *Cousteau,* the defendants' activities in Texas were significantly more substantial than those of Defendants in this case. The defendants in *Cousteau* were contractually re-

quired to deliver goods to Texas, and they were permitted a right of disapproval over the work the plaintiffs were doing in Texas. *Id.* at 496, 497 n. 24. The contract at issue was also formed in Texas. The Fifth Circuit, therefore, found that the "essential locus" of the contract was Texas. In this case, Defendants' activities in Texas merely involved the sending of notices and the making of calls to Texas. The Agreement was consummated in California and it involves a California based company. The "essential locus" of the Agreement, then, is California, not Texas. On that basis, this case is distinguishable from *Cousteau.*

This case is also distinguishable from a series of cases in which the nonresident defendant caused foreseeable business activity in the forum state. *See, e.g., Southwest Offset, Inc. v. Hudco Publishing Co., Inc.,* 622 F.2d 149 (5th Cir.1980). The Fifth Circuit has held that even if a defendant performs no physical activities in the forum state, that state can assert jurisdiction if the defendant's activities outside the state cause reasonably foreseeable activities inside the state. *See, e.g., Products Promotions, Inc. v. Cousteau,* 495 F.2d 483, 496 (5th Cir.1974). The Fifth Circuit has refined that rule, however, to distinguish defendants whose activities cause the production of goods or provision of services within the forum state from defendants whose activities merely cause payment in the forum state. *Mississippi Interstate Express, Inc. v. Transpo, Inc.,* 681 F.2d 1003, 1007 n. 2 (5th Cir.1982). In cases such as the one at bar, in which the resident plaintiff's basic duty is to provide payment, the plaintiff must show additional factors in order to justify the assertion of personal jurisdiction. *Id.*[1]

The remaining issue, then, is whether the Agreement's choice-of-law provision provides sufficient additional "contacts" to establish personal jurisdiction over Defendants. The Fifth Circuit has decided several personal jurisdiction cases involving the use of a choice-of-law provision. *See Marathon Metallic Building Co. v. Mountain Empire Construction Co.,* 653 F.2d 921, 923 (5th Cir.1981); *Gold Kist, Inc. v. Baskin-Robbins Ice Cream Co.,* 623 F.2d 375, 381, n. 4 (5th Cir.1980). Those cases, though, involved such a "plethora of contacts" that the court was not required to determine whether a choice-of-law provision is a "relevant 'contact' for due process analysis." *Gold Kist, supra,* 623 F.2d at 381, n. 4.

The Second Circuit has, however, squarely faced the choice-of-law issue in several cases. *Galgay v. Bulletin Co., Inc.,* 504 F.2d 1062, 1066 (2d Cir.1974); *Agrashell, Inc. v. Bernard Sirotta Co.,* 344 F.2d 583 (2d Cir. 1965). In those cases the Second Circuit expressed the concern that a choice-of-law provision, if it were deemed a "contact" with the forum state, might function as a de facto agreement to submit to the jurisdiction of a foreign court. The Second Circuit deemed it inequitable to give a choice-of-law provision that weight absent any "express contractual understanding to that effect." *Agrashell, supra,* 344 F.2d at 588. The Second Circuit, therefore, ruled that a choice-of-law provision "does not have jurisdictional implications." *Galgay, supra,* 504 F.2d at 1066.

It seems overbroad to state that a choice-of-law provision has no "jurisdictional implications" whatsoever. A choice-of-law provision might be very relevant in determining the second or "fairness" prong of the Fifth Circuit's due process test.[2] The

---

1. *Compare Standard Fittings Co. v. Sapag, S.A.,* 625 F.2d 630 (5th Cir.), *cert. denied,* 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1980); *Gold Kist, Inc. v. Baskin-Robbins Ice Cream,* 623 F.2d 375 (5th Cir.1980); *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.,* 622 F.2d 149 (5th Cir.1980); *with Charia v. Cigarette Racing Team, Inc.,* 583 F.2d 184, 188 (5th Cir.1978); *Benjamin v. Western Boat Building Corp.,* 472 F.2d 723, 729 (5th Cir.), *cert. denied,* 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973); *Arthur,*

*Ross & Peters v. Housing, Inc.,* 508 F.2d 562 (5th Cir.1965); *American Steel Mills, Inc. v. Cascade Steel Rolling Mills,* 425 F.Supp. 301 (S.D.Tex.1975), *aff'd,* 548 F.2d 620 (5th Cir. 1977).

2. It has long been held that a choice-of-law provision is a factor in the doctrine of forum non conveniens. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Moreover, the Fifth Circuit has

Second Circuit, however, is correct in holding that such a provision should not be a factor in determining if the requisite "minimum contacts" exist. The Fifth Circuit has noted that the "contacts" required by the first prong of the due process test should "support an inference that the nonresident defendant purposely availed himself of the benefits of conducting business in the forum." *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 495 (5th Cir.1974). A choice-of-law provision does not necessarily support that inference. The parties may well agree to such a provision simply to curtail potentially expensive and time consuming problems of comparative law. The provision may have little relation to the location of the defendant's business activities. Thus, it would be inequitable to find that a choice-of-law provision is a "contact" for due process purposes.

In this case, given that the choice-of-law provision is not a "contact", and that Defendants' other contacts are insufficient, Plaintiff has failed to show that assertion of jurisdiction over Defendants would comply with the first prong of the applicable due process test. The Court need not determine whether the assertion of jurisdiction would satisfy the second portion of the due process test; the failure to satisfy the first prong is dispositive. The Court finds that the assertion of jurisdiction over Defendants would violate due process. The Court, therefore, is precluded from ruling as to Defendants' other claims. *Blackeney v. Blackeney,* 664 F.2d 433 (5th Cir.1981).

Defendants' Motion to Dismiss is GRANTED, and this case is DISMISSED without prejudice at Plaintiff's cost.

SO ORDERED.

---

found that the factors associated with that doctrine are relevant in determining the second, or "fairness" element of due process. *Product*

*Promotions, Inc. v. Cousteau,* 495 F.2d 483, 498 n. 29 (5th Cir.1974).